IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WALKER, #R02343, | |
| Plaintiff, | Case No. 22-cv-01162-SPM |
| v. | |
| D. BROOKHART, ETHAN MCQUEEN, JOHNSON 1,[1] NEIKIRK, MUELLER, DUNLAP, C/O HANSON, LENEAR, R. WALKER, SAWYER, RAMISO, ARROW, MUKUS, J. WALLANCE, HARMON, J. MEDLER, MRS. NEW, RICHARDSON, RIGGS, STOVES, HUNTLY, ERWIN, MONI, SLANDER, BFFORD, SLOWGAN, BAKER, OFFICER REED, TAYLOR, BROWN, ROBERT, BURTIS, YONOLS, | |

---

[1] Plaintiff identifies two Defendants as Johnson. The Court will distinguish between them by identifying them as Johnson 1 and Johnson 2.

| | |
|---|---|
| BRIDGWELL,<br>COUNSELOR HILL,<br>ZOLLOUS,<br>PIPER,<br>TITWELL,<br>PURDUE,<br>THOMAS,<br>DOREESE,<br>COOPER,<br>FIERS,<br>OFFICER TRIBBLE,<br>LT. HOWARD,<br>BUTLER,<br>ACKERMAN,<br>GIVES,<br>JOHNSON 2,<br>WILLIAM, and<br>JOHN DOES 1-35,<br><br>           Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff James Walker, an inmate of the Illinois Department of Corrections who is currently incarcerated at Sheridan Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Lawrence Correctional Center ("Lawrence"). The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

In the Complaint, Plaintiff alleges he experienced the following adverse conditions in 2020

and 2021 while housed at Lawrence (Doc. 1):

### Denied Cleaning Supplies

Plaintiff claims that in January, February, March, April, July, August, September, and October 2020, he was housed in a dirty cell and deprived of proper cleaning supplies. His cell had a dirty clogged vent with spider webs, and there were also spider webs under the bunk beds. Plaintiff was not given a mop, broom, and toilet brush and cleaner. He states that these supplies are supposed to given out on weekends. Plaintiff had to clean using the soap given to him to wash his body and at times he was forced to choose between washing his body or keeping his cell clean. The dirt in his cell aggravated his allergies and caused headaches and cold symptoms.

### Unsanitary Showers

During the same period, January, February, March, April, July, August, September, and October 2020, the communal showers were not adequately cleaned. Defendants were not allowing inmate porters out of their cells to clean the showers. The drains would be clogged with trash, hair, and paper and plastic soap packaging resulting in standing water and mold. Inmates would urinate in the showers leaving a foul smell. Plaintiff developed a toenail fungus because of the shower conditions.

### Cold Meal Trays

In January, February, March, April, July, August, September, and October 2020 Plaintiff was repeatedly served cold meal trays. The trays were not kept in warmers to maintain proper temperature, and the food turned cold before it was served to the inmates. For the breakfast trays, most of the food was "ill prepared" with old bread, torn up shells, spoiled milk, and watered-down cereal. During dinner, he was given trays without juice or milk. Often, he was not provided utensils or condiments, and the milk provided was spoiled. Constantly eating cold meals caused Plaintiff to have stomach pain.

### *Feces in Oatmeal*

On April 17, 2020, Plaintiff was given oatmeal by Correctional Officer Harmon that contained rat feces. He requested another four trays, and those trays were also contaminated with rat feces. He collected samples to show Defendants but "to no avail." (Doc. 1, p. 33).

### *Cold Temperatures*

From April 1 through April 22, 2020, Plaintiff was subjected to extremely cold temperatures because the heat was not running. (Doc. 1, p. 33). He complained to Correctional Officers Ramiso, Harmon, Mukus, Johnson 1, Lenear, and Dunlap during their shifts about the heat not being turned on by staff.

### *Small Cell*

From November through December 2020, Plaintiff was housed in a very small cell without room to exercise. (Doc. 1, p. 35). During this time, Lawrence was on lock down, and he was in his cell 21 to 22 hours a day. Plaintiff states the situation was unsanitary because the sink and toilet are close to the bunk beds and towel racks. While on his bunk bed, Plaintiff would have to reach five feet to turn on his television placing him at risk of falling.

### *Contaminated Water*

While incarcerated at Lawrence, the water in the cells was unsafe for drinking. (Doc. 1, p. 36). Plaintiff asserts the Illinois Environmental Protection Agency found in 2018 that the water supplied to Lawrence was toxic and not fit for human consumption. The IDOC Director and Lawrence Administration have ignored the warning given by the Illinois Environmental Protection Agency for years. Prison officials and Defendants have allowed Plaintiff and other inmates to consume toxic tap water placing him at risk for long term health problems.

### *COVID Policy*

Plaintiff asserts that in December 2020, he was recklessly exposed to the COVID-19 virus

from other inmates and staff. (Doc. 1, p. 37-38). Inmates who worked in the kitchen were exposed to staff who had COVID-19, and those inmates transported the virus back to the living units. Additionally, his cellmate was a "porter shower crew worker" who worked with inmates and staff who had tested positive for COVID-19, causing him to further be exposed to the deadly virus.

Officers Dunlap and Riggs would fail to timely buzz open cell doors forcing Plaintiff to stand near other inmates when trying to return to his cell from showering or using the phone. Dunlap, Riggs, Titwell, and Gives would also "key open cell doors with no gloves further" further spreading the virus.

Plaintiff claims that the virus also spread through the vents. He was housed near cells that contained inmates who had contracted the virus. Eventually, Plaintiff contradicted the virus.

### *Sleep Deprivation*

From May 3 through May 13, 2021, Plaintiff was subjected to sleep deprivation. (Doc. 1, p. 38). During this time, the count light in his cell was broken. It would be turned on by staff, but not turn off until two to three hours later. The light blinks and makes a buzzing sound, which prevented Plaintiff from sleeping.

## PRELIMINARY DISMISSALS

First, the Court must dismiss Plaintiff's allegations regarding being housed in a small cell from November through December 2020 and being provided unsafe drinking water while at Lawrence, as these allegations are not asserted against any specific defendant. (Doc. 1, p. 36-37). Plaintiff must associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Plaintiff has named 85 Defendants. Thus, general allegations of unconstitutional conditions do not adequately put each individual defendant on notice of what Plaintiff his claiming against him or her. *See Thomson v.*

*Washington*, 362 F.3d 969, 970–71 (7th Cir.2004) (a complaint must put the defendant on notice of the claims and the grounds they rest upon, along with "some indication ... of time and place."). Accordingly, claims associated with being housed in a small cell from November through December 2020 and being provided toxic drinking water are dismissed without prejudice.

The Court also dismisses all claims against Warden Brookhart and Counselor Erwin. According to the Complaint, their only involvement in the alleged violations was reviewing Plaintiff's grievances. Twice in the Complaint, Plaintiff asserts he grieved the conditions of his confinement and Erwin determined the grievances were duplicates. (Doc. 1, p. 33, 34). One of the grievances was further reviewed by Warden Brookhart, who failed to "address the no heat matter." (*Id.* at p. 33). Mishandling or denial of prison grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Other than reviewing grievances, there are no allegations suggesting personal involvement in Plaintiff's assertions. Accordingly, any claims against Brookhart and Erwin are dismissed without prejudice.

Finally, the Court dismisses any intended claims against individuals who are not named in the case caption. Plaintiff mentions the names Numiller and Henson in his statement of claim (*see* Doc. 1, p. 34), but these persons are not in the case caption or included in Plaintiff's list of defendants. The Court will not treat parties not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

### DISCUSSION

Based on Plaintiff's allegations in the Complaint, the Court redesignates the following counts:

**Count 1:**    Eighth Amendment claim against McQueen, Johnson 1, Neikirk,

|  |  |
|---|---|
|  | John Does 1-4, Dunlap, Hanson, Walker, Sawyer, Moni, Slander, Bfford, Slowgan, and Baker for denying Plaintiff tools to clean his cell. |
| **Count 2:** | Eighth Amendment claim against McQueen, Johnson, Neikirk, Mueller, Dunlap, Lenear, Walker, Sawyer, Riggs, Stover, Baker, Reed, Taylor, and Purdue for failing to maintain clean and sanitary conditions in the showers. |
| **Count 3:** | Eighth Amendment claim against McQueen, Johnson 1, Neikirk, Mueller, John Does 5-12, Dunlap, Hanson, Lenear, Walker, Sawyer Ramiso, Arrow, Mukus, Wallance, Harmon, Medler, New, Richardson, Riggs, Stover, Huntly, Bfford, Slowgan, Baker, Reed, Taylor, Brown, Robert, Burtis, Yonols, Bridgewell, Slander, Hill, Ackerman, Zollous, Piper, Titwell, Purdue, Thomas, Doreese, Cooper, Fiers, Tibble, Howard, Hunly, and Butler for serving Plaintiff cold meal trays. |
| **Count 4:** | Eighth Amendment claim against Harmon for serving Plaintiff oatmeal contaminated with rat feces on April 17, 2020. |
| **Count 5:** | Eighth Amendment claim against Johnson 1, Dunlap, Lenear, Ramiso, Mukus, and Harmon for subjecting Plaintiff to extremely cold temperatures from April 1 through April 22, 2020. |
| **Count 6:** | Eighth Amendment claim against Dunlap, Riggs, Titwell, and Gives for failing to follow proper COVID-19 safety procedures in November and December 2020. |
| **Count 7:** | Eighth Amendment claim against William, John Does 13-35, and Johnson 2 for subjecting Plaintiff to sleep deprivation from May 3 through May 13, 2021. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Unconstitutional Conditions of Confinement Standard

Prison conditions that deprive inmates of basic human needs – food, medical care,

---

[2] *See Twombly*, 550 U.S. at 570.

sanitation, or physical safety – may violate the Eighth Amendment, and a prison official may be held liable for deliberate indifference to the risk of harm to the inmate from those conditions. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

The conditions experienced by an inmate must be severe to support an Eighth Amendment claim." *Perkins v. English,* No. 22-cv-1053-DRL-MGG, 2023 WL 2571717, at *1 (N.D. Ind. Mar. 20, 2023). "[T]he Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349 (1981). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012).

### Count 1

Plaintiff's allegations regarding the conditions of his cell in wing A and a lack of cleaning supplies fail to state a plausible Eighth Amendment claim. First, Plaintiff's claim that his cell had constant dirt and dust that caused cold symptoms does not rise to the level of a serious deprivation required to violate the constitution. Further, assuming that the adverse conditions did deny Plaintiff of "the minimal civilized measure of life's necessities," each Defendants' involvement in the conditions of his cell and whether they knew there was an objectively excessive risk to Plaintiff's health and safety is not articulated in the Complaint. *See Gray v. Hardy,* 826 F. 3d 1000, 1005 (7th Cir. 2016) (discussing the elements of a conditions of confinement claim). Plaintiff states that he sent slips requesting cleaning supplies to officers of his wing, John Does 1-4, and that he was denied cleaning supplies at various points in time "by" Correctional Officers McQueen, Johnson 1, Neikirk, Dunlap, Hanson, Walker, Sawyer, Moni, Slander, Bfford, Slowgan, Baker and Purdue. There is nothing in the Complaint from which the Court can infer that Defendants knew of and ignored a substantial risk of severe injury caused by his cell conditions. *Id.* (recognizing "Eighth

Amendment violations where prisoners are deprived of cleaning supplies and running water only in extreme circumstances"). Plaintiff's allegations regarding denial of cleaning supplies for his cell are dismissed without prejudice.

### Count 2

Conversely, the shower conditions, clogged drains resulting in standing water and exposure to human waste, sufficiently describes a serious deprivation. *See Hardeman v. Curran,* 933 F. 3d 816, 821 (7th Cir. 2019) ("continued exposure to human excrement can violate the Eighth Amendment"). Plaintiff has failed, however, to allege that Defendants were put on notice of the risk to his health and failed to abate that risk. He states that the unsanitary shower conditions occurred because Defendants did not allow the inmate workers out of their cells to clean the showers before the inmates went to dayroom and that Defendants did not allow inmates to return to their cells following dayroom to use the toilets prior to going to the showers, which resulted in inmates urinating in the showers. Nothing in the Complaint suggests that Defendants were subjectively aware that the showers were dirty and needed cleaning or that Plaintiff had contracted a fungus from the shower conditions. Accordingly, Count 2 is dismissed without prejudice.

### Count 3

Plaintiff's claims that he was served cold meals that often included spoiled milk and resulted in stomach pains are also dismissed without prejudice. Plaintiff asserts that 53 Defendants "subjected" him to cold meal trays by not keeping the food in warmers and allowing the trays to become cold before serving them to the inmates. This allegation is too vague to state a claim for an Eighth Amendment violation. Simply serving cold food, standing alone, does not violate an inmate's rights, and Plaintiff does not describe any conduct on the part of individual defendants or how they were put on notice of and disregarded a risk to *his* health. *See Vinegar v. Fairman,* 1995 WL 769758, at *6 (N.D. Ill. Dec. 29, 1995) ("[t]he Constitution requires only that inmates receive

adequate nutrition. Food that is not aesthetically pleasing or tasty does not violate an inmate's civil rights"). These claims are dismissed.

**Count 4**

The Court also dismisses Plaintiff's claim regarding receiving oatmeal containing rat feces. He states that on April 17, 2020, he received a bowl of oatmeal containing rat feces. Plaintiff alleges that when he noticed the feces, he requested another four breakfast trays, and they all also contained rat feces. The only time Plaintiff claims he received contaminated food was on the morning of April 17. This isolated incident does not rise to the level of a constitutional violation. As other courts in this Circuit have recognized, "allegations about occasional instances of food contamination in a prison 'will not support a claim of deliberate indifference to conditions of confinement.'" *Morris v. Buege,* No. 23-cv-11-99, 2023 WL 2465882, at *3 (E.D Wisc. Mar. 10, 2023) (quoting *Olrich v. Kenosha Cty.*, No. 18-cv-1980-pp, 2020 WL 1169959 (E.D. Wis. Mar. 11, 2020)). *See also Franklin v. True,* 76 F. 3d 381, (7th Cir. 1996) (unpublished opinion) (one instance of food poisoning is insufficient to state conditions-of-confinement claim); *Jackson v. Lang*, No. 09 C 5123, 2010 WL 3210762, at *1 (N.D. Ill. Aug. 10, 2010) (one incident of finding rodent parts in a meal did not rise to the level of a constitutional violation) (collecting cases). Count 4 is dismissed without prejudice.

**Count 5**

The Court also finds that Plaintiff has not stated a plausible claim for deliberate indifference regarding the cold temperatures in his cell in April 2020. Plaintiff states he was subjected to extreme cold and that he complained to Defendants Ramiso, Harmon, Mukus, Johnson 1, Lenear, and Dunlap during their shifts "because the heat was not on." (Doc. 1, p. 33). He does not describe or indicate what Defendants did or failed to do in response to his complaints that amounted to deliberate indifference. *Middleton v. Vinardi,* No. 19-cv-00516-JPH-DLP, 2021 WL

4066703, at *2 (S.D. Ind. Sept. 7, 2021) ("[e]xposure to extreme cold without alternative means to keep warm constitutes cruel and unusual punishment") (citing *Flores v. O'Donnell,* 36 F. App'x 204, 206-07 (7th Cir. 2002). These allegations are too sparse for the Court to infer that Defendants Ramiso, Harmon, Mukus, Johnson 1, Lenear, and Dunlap disregarded a risk to Plaintiff's health and safety.

### Count 6

While the presence of COVID-19 in the prisons presents a substantial risk of serious harm, Plaintiff has failed to plead that Defendants acted with "total unconcern for [his] welfare." *Rosario v. Brawn,* 670 F. 3d 816, 821 (7th Cir. 2012). Plaintiff claims that Dunlap and Riggs frequently did not promptly open cell doors when Plaintiff was returning back to his cell, forcing him to wait and stand near other inmates. Additionally, Dunlap, Riggs, Titwell and Gives did not always wear gloves when opening cell doors. The conduct, as pled, demonstrates negligence, and does not rise to the level of deliberate indifference.

Plaintiff further complains of other unsafe practices regarding COVID-19 implemented at Lawrence that he believes put him at risk of contracting the virus. These practices, however, are not asserted against any specific Defendant and are dismissed without prejudice.

### Count 7

Finally, Plaintiff claims that 25 Defendants subjected him to sleep deprivation for ten days when the cell count light in his cell was broken. While it took ten days to fix the light, the Court does not find that this incident rises to the level of cruel and unusual punishment prohibited by the Constitution. Count 7 is dismissed.

### LEAVE TO AMEND

Because Plaintiff has failed to state a claim, his Complaint is dismissed without prejudice. Plaintiff will be granted leave to amend his Complaint. Although in this instance, the Court

considered the sufficiency of Plaintiff's claims before assessing whether his claims were properly joined, it does appear that Plaintiff has improperly joined claims and parties in this case. Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Additionally, Plaintiff has been warned about filing large, complex Complaints against multiple defendants with seemingly unrelated claims. *See Walker v.* No. 22-cv-1164-NJR (S.D. Ill. Dec. 20, 2022) (Doc. 7). In his amended complaint, Plaintiff should limit his claims to only those which are properly joined.

## DISPOSITION

For the reasons stated above, the Complaint is **DISMISSED without prejudice** for failure to state claim for relief pursuant to Section 1915A.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **June 7, 2023**. Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to state claim, failure to comply with a court order, and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. The First Amended Complaint must stand on its own without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of

whether he elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 10, 2023**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**